[Criminal No. 482. Filed November 24, 1920.]

[193 Pac. 299.]

# BEN T. DE WOODY, Appellant, v. STATE, Respondent.

1. HOMICIDE—EVIDENCE OF GOOD CHARACTER OF DECEASED INADMISSIBLE UNLESS ATTACKED.—In a prosecution for homicide, evidence to prove the good character of the deceased is not competent unless that character is attacked, but where the defense puts the character of deceased as a quarrelsome, violent or dangerous man

---

1. The question of character and reputation of deceased as affecting homicide is discussed in notes in 2 L. R. A. (N. S.) 102; 103 L. R. A, (N. S.) 351; 4 Ann. Cas. 338; 11 Ann. Cas. 229.

1. On evidence of specific instance to prove character of victim of crime, see notes in 14 L. R. A. (N. S.) 708; 124 Am. St. Rep. 1031.

1. On admissibility of evidence of turbulent and dangerous character of victim of assault or homicide on issue of self-defense, see note in L. R. A. 1916A, 1245.

in issue, the state may support such character by proof that he was a peaceable, quiet and law-abiding man.

2. Homicide—Attack on Deceased's Character Need not be Direct to Authorize Evidence in Support.—In a prosecution for homicide, it is not necessary that the character of deceased be directly attacked by defendants by evidence as to his general reputation, to render admissible on behalf of the state evidence of his good character.

3. Homicide—Defendant's Version of Quarrels Held not to Permit Support of Deceased's Character. — In a prosecution for homicide, where self-defense was urged, and the state had introduced evidence of previous quarrels, testimony by defendant giving his version of those quarrels, in which he stated that deceased was excited and unreasonable and kept getting madder, was not an attack on the character of deceased which will permit the state to introduce evidence that deceased was a peaceable and law-abiding citizen.

4. Homicide—Claim of Self-defense Does not Alone Justify Support of Deceased's Character.—The fact that defendant, accused of homicide, claims self-defense against an attack by deceased, is not in itself sufficient to authorize the state to introduce evidence of deceased's reputation as a peaceable and law-abiding citizen.

5. Homicide — Erroneous Admission of Evidence Supporting Deceased's Character Reversible. — Where the court erroneously permitted the state to introduce in rebuttal evidence of the reputation of deceased as a peaceable and law-abiding citizen, the Supreme Court cannot presume that such evidence had no influence on the deliberations of the jury, but must hold the admission of such evidence to be reversible error.

APPEAL from a judgment of the Superior Court of the County of Pima. Samuel L. Pattee, Judge. Reversed and new trial ordered.

Messrs. Hill & Winsett, for Appellant.

Mr. Wiley E. Jones, Attorney General, Mr. C. M. Gandy, Assistant Attorney General, Mr. Kirk T. Moore, County Attorney, and Mr. Geo. O. Hilzinger, Assistant County Attorney, for the State.

BAKER, J.—The defendant, Ben T. De Woody, was complained against, tried and convicted of murder in the first degree for killing George W. Rumfield, Jr., by shooting him with an automatic pistol, and

was sentenced to life imprisonment and appeals. The defendant, at the trial, justified his actions under the plea of self-defense. He testified that when he was in the act of shoveling dirt from an irrigating ditch the deceased approached him, in an angry manner, and said, "If you do that I will kill you, damn you, I will shoot you," at the same time making a gesture with his right hand as if to draw a gun from his hip pocket, and the defendant, believing that his life was in imminent danger at the hands of the deceased, fired three shots at the deceased, two of which took effect, one in the head and the other in a vital part of the body. Death seems to have been instantaneous.

In the view we take of the case we do not think it necessary to discuss the general evidence or recite all the various facts of the case; neither will it be necessary to consider all of the assignments of error that have been argued in the briefs, since only one of these assignments possesses any merit.

The state, in rebuttal of the defendant's case, was allowed to introduce evidence of the good character of the deceased for peace and quietude. On the part of the defendant it is urged that the good character of the deceased was not admissible because no attack thereon had been made by the defendant, and on the part of the state it is argued that the testimony was competent and admissible in view of the testimony of the defendant that the deceased had quarreled with him upon two or more occasions prior to the homicide without any just cause, and for the purpose of rebutting the presumption raised by such evidence that the deceased was a quarrelsome and turbulent man.

The general rule in homicide cases undoubtedly is that it is not competent to introduce evidence for the purpose of proving the good character of the deceased until his character has been assailed.

"The good character of the deceased is not a subject of proof in a prosecution against another for killing him where his character had not been attacked by the defense." Wharton on Homicide, 3d ed., par. 269.

In 21 Cyc. 907, it is said:

"Ordinarily the character or reputation of the deceased person is not involved in the issue of murder, and proof relative thereto is generally inadmissible."

The text is supported by numerous decided cases: *Bowles* v. *Commonwealth,* 103 Va. 816, 48 S. E. 527; *Blocker* v. *State,* 61 Tex. Cr. 413, 135 S. W. 130; *Worley* v. *State,* 138 Ga. 336, 75 S. E. 240; *State* v. *Eddon,* 8 Wash. 292, 36 Pac. 139; *Davis* v. *People,* 114 Ill. 86, 29 N. E. 192; *Kelly* v. *People,* 229 Ill. 81, 11 Ann. Cas. 226, 12 L. R. A. (N. S.) 1169, 82 N. E. 198; *Thomas* v. *People,* 67 N. Y. 218; *State* v. *Potter,* 13 Kan. 414; *State* v. *Reed,* 250 Mo. 379, 157 S. W. 316; *Childers* v. *Commonwealth,* 181 Ky. 440, 171 S. W. 149.

It is to be observed, however, that when the defense in a prosecution for homicide puts the character of the deceased as a quarrelsome, turbulent or violent and dangerous man in issue, the state may support it by proofs that the deceased was a peaceable, quiet, and law-abiding man. Wharton on Homicide, 3d ed., par. 269. Furthermore, the attack on the character of the deceased need not be direct as to his general reputation to render admissible evidence of his good character on the part of the state. It is immaterial in what manner the attack is made, whether by evidence of general reputation or by any other species of evidence. If the issue is raised by the defense at all, the state may meet it by evidence of general reputation as to good character. Wharton on Homicide, 3d. ed., par. 270; *People* v. *Gallagher,* 174 N. Y. 505, 66 N. E. 1113, affirming 75 App. Div. 39, 78 N. Y. Supp. 5. No general rule can be laid down for the determination of what will be held to constitute an attack by the defendant on the character of the deceased so as

to "open the door" for rebuttal on behalf of the state, but each case must be decided according to its own circumstances or facts. 13 R. C. L., par. 219, p. 917; *Kelly* v. *People, supra.*

Coming back to the concrete facts of the case, the state in its case in chief introduced evidence tending to show a number of quarrels, more or less violent in their character, between the deceased and the defendant, growing out of business affairs. The tendency of the testimony in respect to these quarrels was to show that the defendant was in the wrong; that he promised to turn over some pay checks which he held for the purpose of liquidating the joint indebtedness of himself and the deceased, which they had incurred in the purchase of a store, etc., and that he refused to do so, claiming that he had made no such agreement; that he refused to comply with his promise, as claimed by the deceased, to lease or rent a piece of land to the deceased; that the wife of the defendant took some $40 from the cash drawer of the store in payment of several sacks of beans, such amount being in excess of the sum justly due or payable. The defendant, on taking the stand in his own behalf, gave testimony tending to explain the cause of the quarrels between himself and the deceased which had been brought out by the state and justifying himself. He gave his version of the quarrels, and in so doing he stated substantially that the deceased kept "quarreling" and "fussing" with him about the pay checks, that he would approach the defendant in a very ugly manner and ugly way about the checks every morning when the defendant went to open the store and sweep it out, and every evening when he would go in the store, after working hours, that the deceased was excited and would not listen to reason, and when the defendant attempted to show him where he was unreasonable he would not listen, but got all the "madder."

The question therefore for decision is: Was the evidence of the defendant, giving his version of the quarrels and tending to show that the deceased was the aggressor and acting in an ugly manner and way during the quarrels, and would not listen to reason, but grew madder, such an assault on the character of the deceased as would permit the state to introduce rebutting testimony of his good character? We think not. Evidently this testimony was not intended to and did not reflect on the general character of the deceased as to quarrelsomeness, turbulence or violence, but only as to his manner and demeanor toward the defendant during the quarrels. The testimony was not introduced, and it was not admissible to prove general reputation, and the circumstances of ill temper exhibited by the deceased and testified to did not show or tend to show that the deceased's character for peace and quiet was bad. The full scope or effect of the testimony was only to show that the two men fell out and quarreled over a business matter, and one exhibited bad temper and ugly conduct. This he might do and yet not be a quarrelsome, turbulent or violent man. Certainly it must be conceded that the defendant had the right to give his version of the quarrels, which the state had already put in evidence against him, and if in doing so some acrimonious demeanor or conduct of the deceased was made to appear it cannot be justly and reasonably said that an attack on the character of the deceased had been made in the sense that the state could introduce proof of good character in rebuttal.

It is suggested in the brief of counsel for the state that, since the defendant relied on the doctrine of self-defense, for that reason alone the state could introduce proof of the good character of the deceased in rebuttal. But we do not think that proof of the attack by the deceased upon the defendant at the time of the

homicide was sufficient to warrant proof of the peaceable character of the deceased.

"When not assailed by the prisoner, the character of the deceased is not admissible, although he pleads self-defense and attempts to establish it." *Pound* v. *Ga.*, 43 Ga. 88; *Ben* v. *State*, 37 Ala. 103; *State* v. *McCarthy*, 43 La. Ann. 541, 9 South. 493; *Kennedy* v. *State*, 140 Ala. 1, 37 South. 90; *Timmerson* v. *State*, 133 Ala. 18, 32 South. 141; *Kelly* v. *People, supra; State* v. *Potter, supra.*

"Such testimony tends to distract the minds of the jury from the principal question, and should only be admitted when absolutely essential to the discovery of the truth." *Kelly* v. *People, supra.*

The holding of the Indiana Supreme Court in *Thrawley* v. *State*, 153 Ind. 375, 55 N. E. 95, and several other cases decided by that court and cited by counsel for the state, that in murder cases, where the defendant pleads self-defense and introduces evidence for the purpose of showing an apparently felonious assault upon him by the deceased at the time of the homicide, the state may, in rebuttal, prove the good character or reputation of the deceased for peace and quietness, is not the prevailing rule upheld by the great weight of authority. The Supreme Court of Illinois, in *Kelly* v. *People, supra,* commenting on the Thrawley decision, said:

"That decision does not appear to be supported by any authority, and we are not impressed with the reasoning upon which the conclusion rests."

We cannot presume that the evidence of the good character of the deceased had no influence on the deliberations of the jury (17 C. J. 275), and we are satisfied that the admission of such evidence over the objection of the defendant was reversible error.

The judgment of the lower court is reversed and a new trial ordered.

CUNNINGHAM, C. J., and ROSS, J., concur.