ROGERS, J.
 

 The defendant was tried and found guilty of having stolen goods in his pos
 
 *697
 
 session. After conviction, but before sentence, he filed a motion for a new trial based upon the general ground that the verdict was contrary to the law and the evidence, and also upon the ground that one of the members of the jury that convicted him was not a qualified juror, for the reason that he had removed to, and was a resident of, the parish of East Baton Rouge. The testimony of the alleged incompetent juror was taken, when the trial judge held him to be qualified, and overruled the motion for a new trial. Defendant reserved a bill to the ruling. He was then sentenced to imprisonment at hard labor for not less than 20 months nor more than 24 months. This appeal is prosecuted from defendant’s conviction and sentence.
 

 The first ground of complaint set forth in the motion for a new trial presents nothing for review by this court. In support of the second ground of complaint set forth in said motion, defendant and’ his attorneys allege, under oath, that, at the time the juror was accepted, they did not know he was a resident of the parish of East Baton Rouge or that he had removed from the parish of Tangipahoa; and, further, that on his examination on his voir dire the said juror had stated he knew of no reason why he should not serve in the case.
 

 If it be conceded, that the juror was incompetent because he was a nonresident of,the parish, nevertheless it does not appear that the defendant interrogated him concerning his residence, when he was consigned to him for examination on his voir dire, or that defendant made any other serious effort to ascertain the facts before accepting the juror. In State v. Foster, 150 La. 971, 91 So. 411, this court said, at page 985 (91 So. 416) of the opinion, in answer to a similar contention:
 

 “To take advantage of such a point, after verdict, it must be made to appear that the disqualification of the juror was not known to defendant, when the juror was accepted by him, and could not then have been ascertained by due diligence; and it must be made to appehr that such diligence was exercised by an examination of the juror, on his voir dire, touching his qualifications, and that he answered falsely” — citing authorities.
 

 Counsel for defendant argue, however, that due diligence was shown on his part and on the part of his counsel because the juror was asked the direct question, on his voir dire, if he knew of any reason why he could not serve as a juror and his answer was he knew of no such reason. There is no transcript of the examination of the juror on his voir dire in the record. When he was examined in connection with defendant’s motion for a new trial, the juror was asked: “Q. Did you not state on your examination on voir dire that you knew of no reason why you should not serve as a juror on this case?” And the answer was: “A. I think I did.”
 

 Granting, that the juror was interrogated and answered on his voir dire examination as contended for by defendant, nevertheless it is not shown whether the question was propounded to the witness by counsel for the state or by counsel for the defendant; and, in any event, the juror was not questioned specifically in regard to his residence, and his answer that he knew of no reason why he should not serve as a juror was truthfully made, because he believed he was a resident of the parish of Tangipahoa and was duly qualified to act. In these circumstances we think the case is well within the rule which we have quoted from State v. Foster, supra.
 

 Moreover, it does not appear that the juror was incompetent. The evidence shows he was a resident of the parish of Tangipahoa for 26 years; that about 7 months prior to the trial of defendant’s case he had sold out his property in the town of Kentwood, and that his wife and his two sons had gone to Baton Rouge, where the boys had secured work with the Standard Oil Company; that his residence, so-called, in Baton Rouge was
 
 *699
 
 temporary and not■ permanent;that he had not purchased any home there; that he himself had been residing most of the time up to Christmas, defendant’s trial was in February, in the parish of Tangipahoa, with a part of the' time spent in Mississippi, pursuing his business of selling horses; that he had paid the poll taxes of himself, his wife, and his daughters in the parish of Tangipahoa, and that it was his intention to retain his domicile in that parish as long as he could; that his wife was dissatisfied with Baton Rouge, and he was on the lookout for a place to locate. We think, under the circumstances and with the intentions disclosed, the absence from the parish of Tangipahoa of the juror was merely temporary, and that it had no effect upon his residence in the sense in which the term is used in Act 135 of 1898, prescribing the qualifications of jurors. State v. Foster, supra; State v. Tomsa, 126 La. 682, 52 So. 988; State v. Wimby, 119 La. 139, 43 So. 984, 12 L. R. A. (N. S.) 98, 121 Am. St. Rep. 507, 12 Ann. Cas. 643.
 

 For- the reasons assigned, the conviction and sentence appealed from are affirmed.