THOMPSON, J.
 

 The defendant was given the maximum sentence of 20 years in the penitentiary, having been convicted of an assault with intent to commit rape on a girl nine years old.
 

 He complains that the trial was illegal and irregular and submits his appeal on seven bills of exception, including one reserved to the denial of a motion for a new trial.
 

 The first.bill relates to the refusal of a continuance asked on the ground that the counsel had not had sufficient time to prepare his defense.
 

 The record discloses that the crime was committed on February 28, 1929; that the defendant was arrested on March 8th and was indicted and arraigned on April 16,1929.
 

 The case was fixed for trial on April 22d.
 

 The counsel was present when the ease was fixed and made no objection to the fixing. The trial judge states that it developed on the trial of the case that the senior counsel for the accused had counseled and advised with the accused as early as March 18th, a month prior to the day fixed for the trial.
 

 The matter of refusing or granting continuances is within the sound discretion of the trial judge, and we do not find in this case that there has been any abuse of that discretion.
 

 The second bill was taken to the overruling of a second motion for continuance.
 

 The basis of this motion was that the defendant had not had the benefit of compulsory process of the court to obtain the attendance of Herbert Jacobs, one of his witnesses. This witness was supposed to live in De Soto parish, and a subpoena addressed to him was sent to the sheriff of that parish.
 

 The sheriff under instructions sent the subpoena to the sheriff of Caddo parish on information that the witness was probably in the last-named parish. The sheriff of Caddo returned the subpoena with a letter to the sheriff of Sabine parish to the effect that the witness was not to be found at the address given. The sheriff of Sabine parish made return on the subpoena on information received
 
 *25
 
 from the sheriff of De Soto and of Caddo that Herbert Jacobs could not be located after diligent search by the authorities in De Soto parish.
 

 It was further certified in the return that the summons was received by Williams, sheriff at Mansfield, who was unable to locate the witness. That said sheriff forwarded the summons to Sheriff Hughes at Shreveport giving him the address of the witness.
 

 That Sheriff Hughes made diligent search and was unable to locate the witness at the address given or anywhere in Shreveport.
 

 The trial judge was of opinion that sufficient showing had been made by the several sheriffs that the witness could not be found for service and we are constrained to agree with him. The witness had no definite domicile and could not be located at any of the addresses furnished. Everything was done that could be reasonably expected of the officers to obtain service, and this is sufficient answer to the objection that the defendant had not had the full benefit of the process of the court.
 

 The defendant made no further attempt to locate the witness for the officers than to give the address at Mansfield and at Shreveport.
 

 The witness was not to be found in either place. There was nothing more that could be done by the officers. They were not required to search all over the city of Shreveport, nor to go around over the highways and byways of De Soto and Caddo parishes.
 

 On the showing made the defendant was called upon to inform the court what he expected to prove by the witness, and if the testimony had been shown to be material the court would no doubt have granted a continuance in the absence of an admission by the state that the witness would testify to the facts stated. But the defendant declined to state what he expected to prove by the absent witness. He therefore has no just complaint.
 

 Another ground for a continuance is set out in the third bill of exception, and this is based on the absence of two witnesses when the case was called for trial.
 

 One of these witnesses, Henry Williams, was a resident of De Soto parish, and the other one, Mrs. M. Y. Flores, was a resident of Sabine parish.
 

 The two witnesses had been duly summoned but were unable to come to court. The facts expected to be proved by the two witnesses were stated in the affidavit for a continuance, and it was admitted by the state that the witnesses would testify as stated. The ruling of the court was justified under the statute (Act No. 84 of 1894) which permits the state to avoid a continuance and to put an accused on trial by admitting that the absent witness would testify to the facts on which the application for continuance is based.
 

 We are informed that the defendant did not offer the admission of the district attorney in evidence, nor did he submit to the jury the facts that he expected to prove- by the two witnesses.
 

 Having had the process of the court to obtain the two witnesses, the defendant was required to disclose what he expected to prove by them. When he did this the court was justified in forcing him to trial after the state was willing to mate and did mate the admission authorized by the statute.
 

 The fourth and fifth bills were reserved to the overruling of a challenge for cause of J. W. Simpson and Joel Cuningham, who were called for examination as jurors. Simpson was challenged peremptorily, but defense had exhausted his challenges, and Cuningham was over objection of defendant permitted to serve on the jury.
 

 
 *27
 
 The objection to Simpson was that be bad formed an opinion in the case and therefore was incompetent. It doés not appear whether his opinion was favorable or unfavorable. We will assume, however, that counsel tools it to be unfavorable, otherwise he would have preferred to have had the juror on the panel.
 

 The juror did state that he had formed an opinion and that it was of a fixed nature.
 

 If such statement had not been fully explained and virtually destroyed by his other answers to questions propounded to him, we would be bound to conclude that he would not have been an impartial juror. But the opinion he had was based on hearsay and general rumor. He had not discussed the ease with any of the witnesses and knew nothing of the facts personally.
 

 He repeated the statement several times that he could and would disregard any opinion he might have had and decide the case solely on the evidence submitted on the trial. The whole examination of the juror shows very clearly that he had no definite fixed opinion as to the guilt or innocence of the defendant'.
 

 An opinion which is not fixed, which has not been deliberately formed, which could be changed by the evidence, and which would readily yield to the evidence adduced on the trial, is not such as to disqualify or render a person incompetent to serve as a juror in a given case. Code of Criminal Procedure, art. 351, p. 86.
 

 What has been said with reference to Simpson is applicable to the juror Cuningham, with this modification: Cuningham does not appear to have had any definite opinion about the case. He had heard it discussed but had not heard the facts. He knew very little about the facts, and he was in a position to try the case on the evidence, disregarding entirely what he had heard in the general dis-eussion which took place about the time the crime was committed.
 

 We are of the opinion that the two jurors were qualified to give an impartial judgment in the case.
 

 The sixth bill of exception relates to the competency of the victim of the assault to testify as a witness in the case.
 

 The first objection was that the witness was too young. It being disclosed that she was nine years old, the objection was then made that the witness did not have sufficient understanding and was therefore incompetent.
 

 The examination of the young girl disclosed that she was of average intelligence; that she attended the public schools; that she was a Sunday school pupil; that she had been taught to believe that there was a God and a heaven, a place to reward the good, and that if she did not tell the truth she would be punished.
 

 She testified that she knew what it was to take an oath as a witness and that her mother told her to tell the truth about the case and if she did not tell the truth that it would be perjury.
 

 In answer to leading questions propounded by counsel for the defendant, the girl was induced to say that she was going to tell all that she was told to say, and counsel makes this statement as the basis for the argument that the witness was incompetent. The entire examination of the witness shows, however, that she did not fully realize the nature and import of the questions asked by counsel. We are quite sure she did not mean to say that she was to tell only what she was told to tell, when her mother told her to tell only the truth.
 

 Counsel surely cannot be serious in his contention that the girl was incompetent and without proper understanding because of her
 
 *29
 
 answers yes to- Ms leading questions. If she possessed sufficient intelligence to keep in mind and repeat a story which some one else had previously told her, then she must admittedly be a person of proper understanding within the meaning of the statute defining the competency of witnesses.
 

 Counsel in their brief say that three young men testified to having seen the assault committed. The jury found the defendant guilty on the facts. The trial judge refused a new trial because he believed the verdict was correct on the facts. This court finds no reversible error in any of the bills of exception or otherwise contained in the record.
 

 The conviction and sentence are therefore affirmed.